| 92 | 577 |
|----|-----|
| 93 | ¹410 |

**Delaware and Hudson Canal Co. v. Michael Mitchell.**

| 92 | 577 |
|----|-----|
| 112 | ¹340 |

| 92 | 577 |
|----|-----|
| s113 | 434 |

1. ADMISSIONS—*Of Agents, When a Part of the Res Gestæ.*—The declarations and admissions of an agent made in the course of his agency, in connection with an act or transaction then depending *et dum fervet opus*, may be shown as a part of the *res gestæ*. But his declarations or admissions as to what his principal had done at some previous time, remote from the transaction then depending, can not be treated as a part of the *res gestæ*.

2. SAME—*Of Officers of Corporations.*—None but general officers can bind a corporation by their declarations or admissions, and such declarations and admissions to have such an effect must be made by officers while engaged in the line of their duty, doing some act required or permitted of them, by their office, in the transaction of some business.

3. CORPORATIONS—*When the Admission of an Employe is Not Binding.*—An employe of a corporation with no other powers than to present a bill for payment can not bind the corporation by his declaration or admission that at some previous time his employer had entered into a contract with the debtor, the making of which was at the time a matter of dispute between them.

4. DAMAGES—*For the Refusal to Deliver Goods Sold.*—In an action by the vendee of personal property against the vendor for a refusal to deliver, the measure of the damages is the difference between the contract price and the market price or value of the property at the time and place where the property should have been delivered in a compliance with the terms of the contract.

5. CONTRACTS—*What Amounts to an Entire Repudiation.*—A retail dealer in coal entered into a contract with a wholesale dealer for his supply of coal to be used in his trade during the season. *It was held* that a refusal of the vendor to deliver the portion of the coal first ordered by the vendee was a complete repudiation of the entire contract.

**Assumpsit,** for a failure to deliver merchandise. Appeal from the Circuit Court of Cook County: the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed January 7, 1901.

ULLMANN & HACKER, attorneys for appellant.

C. W. GREENFIELD, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.
Appellee, a retail dealer in coal, brought this suit against

appellant, a wholesale dealer, to recover for breach of contract. Appellee claims that he entered into contract with appellant for his season's supply of coal to be used in his retail trade in the season ending May 1, 1896. The representatives of appellant deny that any such contract was ever made. The issues were submitted to a jury and a verdict was returned for appellee, by which his damages were assessed at $2,200. Judgment was entered upon this verdict. Inasmuch as it will be necessary to reverse this judgment for error in procedure, we refrain from reciting or considering the evidence at length. It is enough to state that the right to a recovery depended upon the question of whether a contract was in fact entered into between the parties. Upon this question of fact the evidence was conflicting. It is assigned as error that evidence of a conversation between appellee and one Frank Mitchell was admitted over objection. Frank Mitchell was employed by appellant as one of its dock superintendents. He called upon Michael Mitchell, the appellee, to present a bill for coal delivered. Appellee testified that the following conversation then occurred:

" He said, 'Mitchell, I came to collect this bill.' I said, 'You owe me considerable more than that and I will not pay it.' 'Well,' he said, 'You had better pay it—it will give you a better standing in court and I will settle on the original contract price.' "

Appellee's bookkeeper was also permitted, over objection, to testify to the same conversation, in which he corroborated the appellee.

The vital question in the case was as to whether any contract existed between the parties, it being claimed by appellee that the coal had been bought upon a contract for the season's supply, and it being claimed by appellant that no such contract was ever made, but that the coal had been bought upon an ordinary running account between the parties.

The force of this evidence was to show by the admission of appellant, made through its employe, Frank Mitchell,

that there was a contract, in that he spoke of " the original contract price."

If the evidence was competent, it was calculated to have much weight with the jury in a case where the making of the contract was affirmed by appellee in positive terms, and in equally positive terms denied by Bogle, the local manager of appellant, through whom the contract is alleged to have been made.    The propriety of admitting this evidence depends upon the relation of Frank Mitchell to appellant at the time of the making of the alleged declaration and the nature of the transaction in the course of which the declaration was made.

The evidence discloses that Bogle was the chief representative and general manager of the appellant in the city of Chicago, where the transactions were had.    Frank Mitchell is shown to have been a dock superintendent, who was sent to collect a bill for coal delivered to appellee. There is no evidence showing or tending to show that he had any power or authority to represent appellant in the making of contracts.    On the contrary it appears that Bogle was the only agent of appellant in Chicago so empowered, and that he was the official to whom Frank Mitchell directed appellee at the time the making of a contract was discussed.    We are unable to see how Frank Mitchell could, by reason of his employment or agency, make any admissions which would be binding upon appellant.    The conversation was held after the time of the alleged making of a contract and after the making of it had been disavowed by Bogle, representing appellant, and hence after breach of it, if there was any such contract.    The declaration and admission of an agent, made in the course of his agency, in connection with an act or transaction then depending *et dum fervet opus* may be shown as part of the *res gestæ*.    But his declaration or admission as to what his principal had done at some previous time, remote from the transaction then depending, can not be treated as part of the *res gestæ*.    1 Greenleaf on Evid. (13th Ed.), Secs. 113 and 114; M. C. R. R. Co. v. Gougar, 55 Ill. 503; Jenks v. Burr, 56 Ill. 450;

Hovey v. Middleton, Id. 468; C. & St. L. R. R. Co. v. Ashling, 34 Ill. App. 99; Fairbank Canning Co. v. Weill, 35 Ill. App. 366; Gillingham v. Christen, 55 Ill. App. 17; Union Bank v. Post, 64 Ill. App. 404.

Nor, in any event, could Frank Mitchell so bind this appellant by declaration or admission, for he was not a general officer of appellant, and he had no power to bind appellant by the making of any such contract as the one here alleged.

In C. & St. L. R. R. Co. v. Ashling, *supra*, the court said:

"But even in the case where the declarations of a president may bind a corporation, they must be so intimately connected with the discharge of some duty required by him by virtue of his office that such declarations are a part of the *res gestæ.* * * * We think this distinction will be found to run through all the cases, viz., that none but general officers can bind corporations by their declarations and admissions, and that even then such declarations must be made while they are engaged in the line of their duty, doing some act required or permitted of them by their office, in the transaction of some business."

It seems perfectly clear that Frank Mitchell, who, as the evidence discloses, had no other duties or powers as an employe of appellant except to superintend a dock or present a bill for payment, could not bind the appellant by his declaration or admission that at some previous time appellant had entered into a contract with appellee, the making of which was then a matter of dispute between appellant and appellee. We are of opinion that the evidence was improperly admitted.

The only other questions necessary to be considered relate to instructions. We are of opinion that the instruction given by the court as to the measure of damages is correct. The general rule is that in an action by the vendee of personal property against the vendor for a refusal to deliver, the measure of the damages is the difference between the contract price and the market price or value of the property at the time and place where the property should have been delivered in a compliance with the terms of the contract. 2 Chitty on Contracts (11th Am. Ed.),

1331; Fox v. Kitton, 19 Ill. 519; Sleuter v. Wallbaum, 45 Ill. 43; Kadick v. Young, 108 Ill. 170; L. S. & M. S. R. R. Co. v. Richards, 152 Ill. 59; Tribune Co. v. Bradshaw, 20 Ill. App. 17; Rice v. P. P. Glass Co., 88 Ill. App. 407; Hochster v. DeLatour, 20 Eng. L. & Eq. R., 157; Gainsford v. Connell, 2 Barn. & Cress. 624; Masterton v. Mayor, etc., 7 Hill, 61; Dey v. Dox, 9 Wend. 129; Shaw v. Nudd, 8 Pick. 9; Haines v. Tucker, 50 N. H. 307; Sheppard v. Hampton, 3 Wheat. 200.

Here there was a breach of the contract, if there was a contract, when Bogle refused to deliver the portion ordered in October, 1895. It was a complete repudiation of the entire contract. It amounted to a putting of an end to the contract so far as the appellant was concerned. Remelee v. Hall, 31 Vt. 582.

It was not merely an announcement of an intention to refuse to carry out the contract, but there was an actual breach of it by the refusal to deliver the part ordered and a repudiation of the entire contract by a denial of its existence.

Appellee, if entitled to recover at all, was entitled to have his damages measured by the market values obtaining at the various times when he required the portions needed in his season's business. 2 Sedgwick on Damages (8th Ed.), 737; Long v. Conklin, 75 Ill. 32; Boorman v. Nash, 9 Barn. & Cress. 145; Brown v. Muller, L. R., 7 Exch. 319; Roper v. Johnson, L. R., 8 C. P. 167.

The Long case, *supra*, decided by our Supreme Court, is relied upon by the author in Sedgwick on Damages for the announcement that where a defendant has contracted to deliver a commodity as needed, and has subsequently repudiated the contract, the plaintiff is allowed to recover upon the basis of the market values at the different times it was needed, and is not confined to the price at the time of the repudiation. In the Long case, as in this case, the alleged contract was to furnish a commodity at prices fixed during a certain season. The court said:

"Appellant's denial of the contract in May did not release

him from the obligation to deliver according to the contract, from time to time, through the season.

"Appellee had a right to make purchases at the times when, by the contract, appellant was to have delivered the wood; that is, at the times they should need it through the season for use. The law would not compel them to buy all at once that which they could only use in parcels from time to time, nor would it compel them to enter into a continuing contract with any other person; certainly not without it was practicable to have made a contract of such a sort."

The evidence established that appellee had no coal yard, but hauled from wholesaler's yards to his customers.

It is not shown that it was practicable for appellee to have obtained another forward contract with any other party after the repudiation, by which the loss could have been reduced.

We find no error in the refusal or modification of instructions complained of by counsel for appellant. The objection that the first instruction tendered by appellee and given by the court assumes the making of a contract, is not tenable. The language is thus qualified : "provided you find from the evidence, etc., that a contract was made, etc."

For the error above indicated the judgment is reversed and the cause remanded.