# NELSON ERNEST TUTTLE v. FARMER'S HANDY WAGON COMPANY.[1]

January 2, 1914.

Nos. 18,277—(151).

**Servant not "loaned"—negligence of servant.**

1. Defendant Clow purchased a silo from defendant, the Farmer's Handy Wagon Co., under a contract whereby the company agreed to furnish a man to superintend its erection. In accordance with the contract such superintendent was furnished by the company, and the other workmen including plaintiff were furnished by Clow. Through the alleged negligence of the superintendent plaintiff sustained injuries. *Held:*

(1) Whether the injuries resulted from negligence on the part of the superintendent was a question for the jury.

(2) That the superintendent had not been "loaned" to Clow but remained the servant of the company and hence was not a fellow servant of plaintiff.

**Peremptory challenges.**

2. Limiting the number of peremptory challenges to three for both defendants, even if erroneous, does not entitle appellant to a reversal, unless it appear that appellant was not permitted to exercise all three challenges and that some juror remained upon the panel whom appellant wished to exclude therefrom.

Action transferred to the district court for Ramsey county by the minor plaintiff, by his guardian ad litem, against the Farmer's Handy Wagon Co. and Willard B. Clow, to recover $40,000 for injuries received while in the employ of defendant Clow.

The amended complaint alleged that plaintiff was employed by defendant Clow to work at common labor, that defendant company

[1] Reported in 144 N. W. 938.

Note.—As to which of two or more persons is master of third, see elaborate note in 37 L.R.A. 33. And upon the statutory liability of employers for the negligence of superintendents while participating in the work, generally, see notes in 58 L.R.A. 47; 16 L.R.A.(N.S.) 146; and 21 L.R.A.(N.S.) 601.

knew of that fact; that thereafter he was ordered by defendant Clow to work under the orders of defendant company upon the construction of the silo mentioned in the opinion; that defendant company was negligent in doing all of the work with great and unusual haste; that it negligently failed to adopt a reasonably safe method in elevating the piece of material mentioned from the ground to the staging; that it failed to use proper means for preventing the iron from striking the plank and raised the iron in such a careless manner that the same was thereby caused to strike the projecting end of the plank, by reason of which negligent acts the plaintiff was injured. The separate answer of defendant company alleged that defendant Clow furnished all labor, material and appliances used in the erection of the silo, except the man to superintend its erection furnished by defendant company and an assistant also furnished by it, and the answering defendant did not supply any labor, material or appliances used in the erection except the man and his assistant. The answer also alleged that plaintiff was injured by his own negligence to exercise ordinary care for his own safety, and that plaintiff and the others engaged in erecting the scaffold were fellow servants of plaintiff.

The case was tried before Dickson, J., who denied the motions of defendant company to dismiss the action as to it, and for a directed verdict, and a jury which returned a verdict for $7,000 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant company appealed. Affirmed.

*Charles Burke Elliott, A. X. Schall, Jr.,* and *Hosmer A. Brown,* for appellant.

*Larrabee & Davies,* for respondent.


TAYLOR, C.

While assisting in the erection of a silo purchased by defendant Clow from defendant the Farmer's Handy Wagon Co. plaintiff fell from a platform near the top of the silo and sustained serious injuries. He brought suit for damages against both defendants, but recovered a verdict against defendant company only. The usual alter-

native motion for judgment notwithstanding the verdict or for a new trial was made and denied; and defendant company appealed.

Defendant Clow gave defendant the Farmer's Handy Wagon Co. an order for a silo to be shipped to Pillager, Minnesota. The company accepted the order and as a part of the contract agreed to furnish a man to superintend the erection of the silo. The contract specified the size and material of the silo and contemplated that it would be shipped to Clow in a "knocked down" condition. It was shipped to Pillager as ordered, and Clow hauled it from that place to his farm and constructed a concrete foundation for it. The company sent the witness, McNown, to superintend its erection. Clow was not at the farm when McNown arrived, nor at any time during the erection of the silo, but the witness Pennington, his foreman upon the farm, acted for him. At his arrival, McNown called upon Pennington to furnish the men necessary to do the work, and Pennington thereupon hired plaintiff and several others for that purpose. McNown was paid for his services by the company, but all the other employees were paid by Clow. McNown took full charge and control of the work. The silo was cylindrical in form, 16 feet in diameter and 32 feet high, and made of staves held in place by iron bands or hoops. After the circular wall was in position, a staging or platform was constructed inside and about 20 inches below the top of the wall for the workmen to stand upon. A plank used while driving the staves into place lay across the top of the silo, nearly at a right angle with the platform, with one end resting upon the wall and the other end projecting two or three feet outside the opposite wall. McNown, plaintiff and the witness Koch were upon the platform for the purpose of placing a hoop in position. While McNown was raising a segment of the hoop, 12 or 15 feet in length, from the ground to the top of the silo by means of a rope attached to it, the plank lying across the top of the silo became displaced and fell in such a way as to precipitate plaintiff from the platform to the ground. He fell a distance of over 30 feet, and sustained severe injuries.

1. Plaintiff bases his right to recover upon the charge that McNown caused the plank to fall by negligently pulling the segment of hoop against the projecting end of it. There is testimony that the

hoop struck the plank and other testimony that it did not. The evidence made the question of negligence a question for the jury. It was properly submitted to them and there is no sufficient ground for this court to overrule their conclusion.

2. The trial court held as a matter of law that McNown was a servant of defendant company, and plaintiff of defendant Clow. Whether the court was correct in so holding is the decisive question in the case.

Appellant contends that it did not undertake to erect the silo and merely loaned McNown to Clow; that Clow was erecting the silo, and that all the employees engaged in the work of erection, including McNown, were his servants. If this be true—if McNown and plaintiff were fellow servants—plaintiff cannot recover. This is conceded. That an employer may loan his servant to another, and that the servant so loaned, while engaged in the business for which he is loaned, is a fellow servant of the other employees engaged in such business is amply sustained by the authorities cited by appellant. Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L.R.A.(N.S.) 334; Delory v. Blodgett, 185 Mass. 126, 69 N. E. 1078, 64 L.R.A. 114, 102 Am. St. 328; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. ed. 480; Forsha v. Nebraska Moline Plow Co. 89 Neb. 770, 132 N. W. 384; Higgins v. Western Union Tel. Co. 156 N. Y. 75, 50 N. E. 500, 66 Am. St. 537; Consolidated Fireworks Co. v. Koehl, 190 Ill. 145, 60 N. E. 87; Westover v. Hoover, 88 Neb. 201, 129 N. W. 285. But we think that McNown had not been loaned to Clow but remained the servant of the company. While the company had not agreed to erect the silo, it had agreed as a part of the contract of sale to furnish a man to superintend its erection. By the terms of the contract Clow had relieved himself from the responsibility of superintending the work of erection, and had imposed that responsibility upon the company. Under the contract, the man to superintend the work was to be selected and paid by the company. Clow had no voice in his selection and was not given any control over him. The company sent McNown to perform the duties which by its contract it had agreed to furnish a man to perform. He was not directed to report to Clow for

orders, nor to perform such duties as might be assigned him by Clow, but was sent to take charge of and direct the work, for the purpose of fulfilling the obligation assumed by the company. So far as appears, he acted wholly under and pursuant to the instructions of the company. He did not place himself under the orders of Clow, and Clow made no attempt to exercise control over him. Instead of reporting to Clow for orders, he required Clow's representative to furnish such workmen and such material as he directed. In compliance with his demand, Clow employed plaintiff and several other workmen to perform that portion of the work which under the contract devolved upon Clow. Assuming to act as the representative of the company, McNown took entire control of the work and of the workmen furnished by Clow at his request.

It seems clear that he was not only an employee of the company, but also engaged in the business of the company, while performing the duties assigned him by the company in respect to the erection of this silo. If a servant be loaned by one employer to another, the servant, for the time being, and for the purpose designated, must cease to be a servant of the one and become the servant of the other. For the time being and for the purpose designated, he must be engaged in furthering the business of the master to whom he is loaned, and not in furthering the business of the master who loans him. The right to control and direct him in the performance of his duties, including the right to dispense with his services, must pass from the one to the other. Such was not the fact in respect to McNown.

Under the rule stated in the cases above cited, we think the court was correct in holding that McNown was the servant of the company, and that plaintiff was the servant of Clow, at the time of the accident.

3. The defendants answered separately by different attorneys and at the opening of the trial requested that each be allowed three peremptory challenges to jurors. The court directed the defendants to join in the peremptory challenges and limited the number to three for both. This is assigned as error. The statute provides: "If there be more than one party on a side, they shall join in any challenge made." [R. L. 1905, § 4170] It is insisted that the interests

of the defendants were antagonistic and that each constituted a "side." We do not feel called upon to decide the question sought to be raised. After the jury had been selected and accepted, counsel stated: "I want the record to show that we desire to strike more than the three jurors peremptorily." The court suggested that he make a motion, to which he responded: "I simply want the record, that is all. * * * If there is any question about it, I want the record to show the fact that we want to strike more and are deprived of doing so by the ruling;" to which the court replied: "Well that is a fact, you are." Thereupon counsel for plaintiff announced that plaintiff was willing for the jurors to be recalled and for defendants to strike three more, to which counsel for appellant responded: "We rest on the record as made;" and the court added: "I will adhere to the ruling." This colloquy did not take place until after the empaneling of the jury had been completed.

Assuming but not conceding that the ruling was erroneous, it does not appear that any juror upon the panel was objectionable to defendants. No such claim was made at any time. No juror was pointed out that they desired to exclude. They did not present any name and request that it be stricken from the panel. They did not assent to the proposition that the jurors be recalled to permit them to strike additional names, but rested "on the record as made." They merely asserted that each defendant had the absolute right to exercise three peremptory challenges, without taking any steps to make it appear that they wished to exclude any particular juror then on the panel, or that the panel contained any juror to whom they objected. It is apparently simply a moot question. Furthermore three peremptory challenges were allowed. In the colloquy above referred to counsel stated that defendants had not jointly stricken the three names, but did not state by whom they were in fact stricken; and the record does not disclose by whom they were in fact stricken. For aught that appears all three peremptory challenges may have been exercised by appellant alone.

That a rule of procedure may have been violated is not a sufficient ground for reversing a trial, unless prejudice resulted therefrom to the party complaining, and we think that appellant is not in a posi-

124 M.—14.

tion, upon this record, to insist that it was prejudiced by the refusal to allow additional challenges.

4. There is no sufficient evidence to substantiate the claim that the jury were chargeable with misconduct in respect to the manner in which they arrived at the amount of the verdict. Neither do any prejudicial errors appear in the rulings or charge of the court.

Order affirmed.